UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

ABEL K. FAMUBODE,                                                      Index No.

               Plaintiff,

                                               **COMPLAINT**

          -against-

THE CITY OF NEW YORK and MICHAEL POPPER,                 **<u>DEMAND FOR JURY</u>**
                                                         **<u>TRIAL</u>**
               Defendants.
------------------------------------------------------------------------X

       Plaintiff Abel K. Famubode, by his attorneys, Ofodile & Associates, P.C., complaining of

Defendants City of New York (hereinafter also referred to as "Defendant City") and Michael

Popper (hereinafter also referred to as "Defendant Popper"), upon information and belief alleges

as follows:


<u>**NATURE OF ACTION**</u>

    1.     This is an action at law to redress employment discrimination on the basis

of national origin and subjection to a hostile work environment on the basis of national origin in

violation of:  Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e to

2000e-17; the New York State Executive Law, Article 15, Section 296 (Human Rights Law); and

the New York City Administrative Code §8, et seq.

    2.     This is also an action at law to redress employment discrimination on the basis of

race and subjection to a hostile work environment on the basis of race in violation of: the Civil

Rights Act of 1866, as amended, 42 U.S.C.§ 1981, et seq.; Title VII of the Civil Rights Act of

1964, as amended, 42 U.S.C. §§ 2000e to 2000e-17; the New York State Executive Law, Article

15, Section 296 (Human Rights Law); and the New York City Administrative Code §8, et seq.

3.      This is also an action at law to redress the deprivation, under color of statute, ordinance, regulation, custom or usage, by Defendants, of the rights, privileges and immunities secured to Plaintiff by the First Amendment to the Constitution, and by 42 U.S.C. § 1983, and arising under common law and the laws and statutes of the State of New York and the City of New York.

4.      This is also an action at law to redress retaliation for complaining about national origin discrimination, race discrimination, and the denial of First Amendment freedoms, in violation of: the Civil Rights Act of 1866, as amended, 42 U.S.C.§ 1981 et seq.; Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e to 2000e-17; the New York State Executive Law, Article 15, Section 296 (Human Rights Law); the New York City Administrative Code §8, et seq.; and 42 U.S.C. § 1983.

5.      Plaintiff seeks injunctive and declaratory relief, compensatory and other equitable relief pursuant to: Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e to 2000e-17; the Civil Rights Act of 1866, as amended, 42 U.S.C.§ 1981 et seq.; the New York State Executive Law, Article 15, Section 296 (Human Rights Law); the New York City Administrative Code §8, et seq.; and 42 U.S.C. § 1983.

**JURISDICTION AND VENUE**

6.      Jurisdiction is specifically conferred on this Court by the aforementioned statutes.

7.      Venue is proper because the events complained of herein occurred in Manhattan, New York, which is within the Southern District of New York.

2

**PARTIES**

8.      During all times relevant and material to this case, Plaintiff, a Black Nigerian male, resided in the State of New Jersey.

9.      During all times relevant and material to this case, Defendant City of New York was a municipal corporation incorporated under the laws of the State of New York.

10.      During most times relevant and material to this case, Defendant Michael Popper was employed by Defendant City of New York as the Deputy Director of the Technical Services Unit of the Division of Architecture, Construction & Engineering (DACE) in the New York City Department of Housing, Preservation, and Development (HPD) and then as the Acting Director of DACE at 100 Gold Street, New York, New York 10038.

11.      The actions of Defendant Michael Popper complained of herein were done as part of the custom, practice, usage, regulation, and/or direction of Defendant City of New York, and Defendant City is as such responsible for the actions of Defendant Michael Popper.  Defendant City is also responsible for the actions of Defendant Michael Popper under the common law principal agent/*respondeat superior* rule.

**FULFILLMENT OF ADMINISTRATIVE PREREQUISITES**

12.      This action is being filed within 90 days of Plaintiff's receipt of a Notice of Right to Sue from the U.S. Department of Justice, a copy of which is annexed to this Complaint. In addition, before the institution of this action, Plaintiff served a copy of the Complaint on the New York City Corporation Counsel's Office as well as on the New York City Commission on Human Rights on or about October 6, 2005 in accordance with the requirements of the

3

Administrative Code of the City of New York § 8-502 (c).

## FACTUAL ALLEGATIONS

13.     Plaintiff, a Black male from Nigeria, began working as a Building Inspector for the Technical Services Unit of the Division of Architecture, Construction & Engineering (DACE) in the New York City Department of Housing, Preservation, and Development (HPD) in September 1989.  In or about July 1998, Plaintiff became a Construction Project Manager for the Small Homes Program.  As a Construction Project Manager in the Small Homes Program, Plaintiff oversaw the construction of moderate and gut rehabilitation projects.  Throughout Plaintiff's employment in DACE, he has received accolades for his work performance from both colleagues and clients.

14.     In or about 1998, Defendant Michael Popper, then a Deputy Director in another of DACE's units, was transferred to the Technical Services Unit and became Deputy Director of that Unit.  Joseph Canton, Director of DACE, introduced Plaintiff to Defendant Popper and told Defendant Popper that Plaintiff has an architectural background.  Defendant Popper asked Plaintiff what country he is from.  Plaintiff responded, "Nigeria".  Defendant Popper stated that in this country, meaning the United States, you have to be registered as an architect to be called an architect, and that process is very difficult.  Plaintiff told him that he obtained all of his architectural degrees here in the United States and that he knows the process.  However, Plaintiff wondered what his country of origin had to do with the discussion and their greeting.  Defendant Popper assumed that because Plaintiff was from Nigeria that Plaintiff did not have the educational background and qualifications that Defendant had.

4

15.     In or about December 2001, Plaintiff wrote a report and prepared a cost estimate for a Small Homes project located at 52-54 Sunnyside Avenue, Brooklyn, New York.  Defendant Popper disagreed with a section of Plaintiff's report because it conflicted with the CPC engineer's opinion.  Defendant Popper called a site meeting on December 7, 2001 with the building management, the CPC engineer, and Plaintiff.  At the meeting, Defendant Popper openly ridiculed Plaintiff's report and Plaintiff himself without allowing Plaintiff the opportunity to compare notes with the CPC engineer.  Defendant Popper later found out that the section of Plaintiff's report that he had disputed was actually correct.

16.     Later on in the day of the meeting, Plaintiff went to Defendant Popper's office and expressed to Defendant Popper how unhappy he was with the way Defendant Popper had treated him at the site meeting and that he wished that Defendant Popper had raised all of his concerns with Plaintiff in private, instead of in front of other people in the context of a meeting.  Defendant Popper barely allowed Plaintiff to finish explaining his point of view before he loudly retorted, "I really don't care.  If you don't like it, you can go back to where you came from."  Plaintiff asked him what where he came from had to do with the issue.

17.     Because Defendant Popper had always been hostile toward Plaintiff without any provocation because Plaintiff is Nigerian, African, and Black, one day Plaintiff asked him if he ever had a bad experience with an African or Africans.  Defendant Popper didn't respond to Plaintiff's question and changed the subject.

18.     In June 2002, Plaintiff received an emergency message from Nigeria informing him that his parents were very ill.  Plaintiff applied for his annual leave to go to Nigeria and see them.  Even though Plaintiff discussed the gravity of the situation with Defendant Popper, he

refused to approve Plaintiff's application.  Upon Plaintiff's information and belief, Defendant

Popper had not refused any White American employees' application for leave.  Plaintiff spoke to

the Director, Joseph Canton, and Mr. Canton saw no justifiable reason for the refusal and

approved Plaintiff's application.  Plaintiff went to Nigeria for a little more than a week and upon

Plaintiff's return to the United States, he was notified that his mother had passed away.

19.     In 2001, Plaintiff had a meeting with Joseph Canton, the Director of DACE, about

the prospects of his receiving a promotion.  During the meeting, Mr. Canton promised to

recommend Plaintiff for a promotion and told Plaintiff that he wanted him to coordinate the

Small Homes Program after the Program expanded a little bit and had more inspectors working

on it.

20.     Later on in 2001, Mr. Canton called Plaintiff and asked him if he would consider

supervising the J-51 Program instead of the Small Homes Program because Mario DeFeo, who

had been supervising the J-51 Program, had retired.  Plaintiff said okay.  Mr. Canton asked

Defendant Popper to prepare Plaintiff for this supervisory position.  Defendant Popper assigned

the more difficult J-51 jobs to Plaintiff and failed to discuss the paperwork aspect of the program

with Plaintiff despite Plaintiff's urging and asking him to do so.

21.     In or about April 2003, Plaintiff asked Defendant Popper when he would finally

allow Plaintiff to take over the J-51 Program.  Defendant Popper said that there was a citywide

promotion/employment freeze and asked if Plaintiff was ready to do it without any remuneration.

Plaintiff readily told him that he was ready to do it without any remuneration pending the lifting

of the freeze.  Defendant Popper said okay.

22.     In December 2003, Joseph Canton, the Director of DACE, retired and Defendant

Popper was appointed Acting Director.  On December 18, 2003, very soon after Defendant

Popper had been appointed Acting Director of DACE, Defendant Popper appointed Joe Longo, a

White American-born male, as Acting Supervisor for the J-51 Program and Vincent Gadiare, a

male from Jamaica, as Acting Supervisor of the Small Homes Program.  Mr. Longo was

eventually permanently appointed to the position of Supervisor for the J-51 Program and Mr.

Gadiare was eventually permanently appointed to the position of Supervisor of the Small Homes

Program.

23.    Plaintiff was supposed to be the individual supervising the J-51 Program, as this

was the position Mr. Canton had offered him.  Plaintiff had extensive direct experience with the

J-51 Program for two years and during that time had been trained by Defendant Popper in

accordance with Mr. Canton's instructions to assume the supervisory position over the Program.

Instead of allowing Plaintiff to assume the position that he had been trained for two years to fill,

Defendant Popper appointed Mr. Longo, who upon Plaintiff's information and belief, had no

experience with the J-51 Program, to become the Acting Supervisor of the J-51 Program.

Plaintiff was not even given the opportunity to compete for the acting supervisory assignment in

the J-51 Program or for the acting supervisory assignment in the Small Homes Program.

24.    In June 2004, Plaintiff filed a charge of discrimination with the U.S. Equal

Employment Opportunity Commission alleging that Defendant Popper discriminated against him

on the basis of his national origin and race, and alleging retaliation by Defendant Popper for

complaining about the way Defendant Popper was treating him.  Shortly after Plaintiff filed this

Charge of Discrimination, he was transferred without his consent from the Small Homes

Program where he had been a Construction Project Manager to the 7A Program.  Although

7

Plaintiff's title in the 7A Program has also been Construction Project Manager, he has been a Construction Project Manager in that Program in name only, as the vast majority of his responsibilities and duties within 7A Program have actually been inferior to those of a Construction Project Manager.  He has only been given one minor construction project to manage and the vast majority of his time has been spent making sure that landlords have removed violations, which is a task that requires less skill and experience and is much less challenging, rewarding, and prestigious than the duties of a Construction Project Manager.  As the vast majority of Plaintiff's responsibilities and duties in the 7A program have been inferior to those of a Construction Project Manager, Defendants have demoted Plaintiff to a less distinguished job involving less challenging, rewarding, and prestigious work.  In addition, Defendants have transferred Plaintiff without his consent to a program with inferior working conditions.  These adverse actions have all been in retaliation for filing a complaint of discrimination and retaliation.

25.    Defendant Michael Popper, while acting as an agent of Defendant City of New York, discriminated against Plaintiff on the basis of his race and national origin by denying him the promotion to the position of Supervisor of the J-51 Program and instead giving it to a White American-born male.  Defendant Michael Popper, while acting as an agent of Defendant City of New York, also retaliated against Plaintiff for exercising his right to freedom of speech and complaining to Defendant Michael Popper about the way he was treating Plaintiff.  Defendant Michael Popper retaliated against Plaintiff for exercising his right to freedom of speech by denying his request for leave to go see his ill parents in Nigeria and also by denying him the promotion to the position of Supervisor of the J-51 Program.

8

26.     In addition, Defendants have retaliated against Plaintiff for complaining to the EEOC about race discrimination, national origin discrimination, and retaliation for exercising his right to freedom of speech.

27.     Plaintiff has suffered a great deal of emotional and mental distress as a result of Defendants' actions toward him.


## FOR A FIRST CAUSE OF ACTION

28.     Plaintiff repeats and realleges paragraphs 1 through 27 as if each paragraph is repeated verbatim herein.

29.     In violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e to 2000e-17, Defendant City of New York denied Plaintiff promotions on the basis of Plaintiff's national origin, which is Nigerian.


## AND AS FOR A SECOND CAUSE OF ACTION

30.     Plaintiff repeats and realleges paragraphs 1 through 29 as if each paragraph is repeated verbatim herein.

31.     In violation of the New York State Executive Law, Article 15, Section 296 (Human Rights Law), Defendant City of New York denied Plaintiff promotions on the basis of his national origin, which is Nigerian.


## AND AS FOR A THIRD CAUSE OF ACTION

32.     Plaintiff repeats and realleges paragraphs 1 through 31 as if each paragraph is

9

repeated verbatim herein.

33.     In violation of the New York City Administrative Code §8, et seq., Defendants

denied Plaintiff promotions on the basis of his national origin, which is Nigerian.


**AND AS FOR A FOURTH CAUSE OF ACTION**

34.     Plaintiff repeats and realleges paragraphs 1 through 33 as if each paragraph is

repeated verbatim herein.

35.     In violation of the Civil Rights Act of 1866, as amended, 42 U.S.C.§ 1981 et seq.,

Defendants denied Plaintiff promotions on the basis of Plaintiff's race, which is Black


**AND AS FOR A FIFTH CAUSE OF ACTION**

36.     Plaintiff repeats and realleges paragraphs 1 through 35 as if each paragraph is

repeated verbatim herein.

37.     In violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§

2000e to 2000e-17, Defendant City of New York denied Plaintiff promotions on the basis of his

race, which is Black.


**AND AS FOR A SIXTH CAUSE OF ACTION**

38.     Plaintiff repeats and realleges paragraphs 1 through 37 as if each paragraph is

repeated verbatim herein.

39.     In violation of the New York State Executive Law, Article 15, Section 296

(Human Rights Law), Defendant City of New York denied Plaintiff promotions on the basis of

his race, which is Black.

## AND AS FOR A SEVENTH CAUSE OF ACTION

40.     Plaintiff repeats and realleges paragraphs 1 through 39 as if each paragraph is repeated verbatim herein.

41.     In violation of the New York City Administrative Code §8, et seq., Defendants denied Plaintiff promotions on the basis of his race, which is Black.

## AND AS FOR AN EIGHTH CAUSE OF ACTION

42.     Plaintiff repeats and realleges paragraphs 1 through 41 as if each paragraph is repeated verbatim herein.

43.     In violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e to 2000e-17, Defendant City of New York subjected Plaintiff to a hostile work environment on the basis of his national origin, which is Nigerian.

## AND AS FOR A NINTH CAUSE OF ACTION

44.     Plaintiff repeats and realleges paragraphs 1 through 43 as if each paragraph is repeated verbatim herein.

45.     In violation of the New York State Executive Law, Article 15, Section 296 (Human Rights Law), Defendant City of New York subjected Plaintiff to a hostile work environment on the basis of his national origin, which is Nigerian.

11

## AND AS FOR A TENTH CAUSE OF ACTION

46.    Plaintiff repeats and realleges paragraphs 1 through 45 as if each paragraph is repeated verbatim herein.

47.    In violation of the New York City Administrative Code §8, et seq., Defendants subjected Plaintiff to a hostile work environment on the basis of his national origin, which is Nigerian.

## AND AS FOR AN ELEVENTH CAUSE OF ACTION

48.    Plaintiff repeats and realleges paragraphs 1 through 47 as if each paragraph is repeated verbatim herein.

49.    In violation of the Civil Rights Act of 1866, as amended, 42 U.S.C.§ 1981 et seq., Defendants subjected Plaintiff to a hostile work environment on the basis of his race, which is Black

## AND AS FOR A TWELFTH CAUSE OF ACTION

50.    Plaintiff repeats and realleges paragraphs 1 through 49 as if each paragraph is repeated verbatim herein.

51.    In violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e to 2000e-17, Defendant City of New York subjected Plaintiff to a hostile work environment on the basis of his race, which is Black.

## AND AS FOR A THIRTEENTH CAUSE OF ACTION

52.     Plaintiff repeats and realleges paragraphs 1 through 51 as if each paragraph is repeated verbatim herein.

53.     In violation of the New York State Executive Law, Article 15, Section 296 (Human Rights Law), Defendant City of New York subjected Plaintiff to a hostile work environment on the basis of his race, which is Black.

## AND AS FOR A FOURTEENTH CAUSE OF ACTION

54.     Plaintiff repeats and realleges paragraphs 1 through 53 as if each paragraph is repeated verbatim herein.

55.     In violation of the New York City Administrative Code §8, et seq., Defendants subjected Plaintiff to a hostile work environment on the basis of his race, which is Black.

## AND AS FOR A FIFTEENTH CAUSE OF ACTION

56.     Plaintiff repeats and realleges paragraphs 1 through 55 as if each paragraph is repeated verbatim herein.

57.     In violation of 42 U.S.C. § 1983, Defendant Michael Popper, while acting under color of State Law, retaliated against Plaintiff for exercising his right to freedom of speech in the workplace under the First Amendment of the Constitution of the United States by denying him leave to spend time with his ill parents and by denying him promotions.

## AND AS FOR A SIXTEENTH CAUSE OF ACTION

58.     Plaintiff repeats and realleges paragraphs 1 through 57 as if each paragraph is repeated verbatim herein.

59.     In violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e to 2000e-17, Defendant City of New York retaliated against Plaintiff for complaining to the EEOC about national origin discrimination by transferring him without his consent to another program to do inferior work to that of a Construction Project Manager.

## AND AS FOR A SEVENTEENTH CAUSE OF ACTION

60.     Plaintiff repeats and realleges paragraphs 1 through 59 as if each paragraph is repeated verbatim herein.

61.     In violation of the New York State Executive Law, Article 15, Section 296 (Human Rights Law), Defendant City of New York retaliated against Plaintiff for complaining to the EEOC about national origin discrimination by transferring him without his consent to another program to do inferior work to that of a Construction Project Manager.

## AND AS FOR AN EIGHTEENTH CAUSE OF ACTION

62.     Plaintiff repeats and realleges paragraphs 1 through 61 as if each paragraph is repeated verbatim herein.

63.     In violation of the New York City Administrative Code §8, et seq., Defendants retaliated against Plaintiff for complaining to the EEOC about national origin discrimination by transferring him without his consent to another program to do inferior work that of a

14

Construction Project Manager.

## AND AS FOR A NINETEENTH CAUSE OF ACTION

64.    Plaintiff repeats and realleges paragraphs 1 through 63 as if each paragraph is repeated verbatim herein.

65.    In violation of the Civil Rights Act of 1866, as amended, 42 U.S.C.§ 1981, et seq., Defendants retaliated against Plaintiff for complaining to the EEOC about race discrimination by transferring him without his consent to another program to do inferior work that of a Construction Project Manager.

## AND AS FOR A TWENTIETH CAUSE OF ACTION

66.    Plaintiff repeats and realleges paragraphs 1 through 65 as if each paragraph is repeated verbatim herein.

67.    In violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e to 2000e-17, Defendant City of New York retaliated against Plaintiff for complaining to the EEOC about race discrimination by transferring him without his consent to another program to do inferior work that of a Construction Project Manager.

## AND AS FOR A TWENTY-FIRST CAUSE OF ACTION

68.    Plaintiff repeats and realleges paragraphs 1 through 67 as if each paragraph is repeated verbatim herein.

69.    In violation of the New York State Executive Law, Article 15, Section 296

15

(Human Rights Law), Defendant City of New York retaliated against Plaintiff for complaining to the EEOC about race discrimination by transferring him without his consent to another program to do inferior work that of a Construction Project Manager.

## AND AS FOR A TWENTY-SECOND CAUSE OF ACTION

70.     Plaintiff repeats and realleges paragraphs 1 through 69 as if each paragraph is repeated verbatim herein.

71.     In violation of the New York City Administrative Code §8, et seq., Defendants retaliated against Plaintiff for complaining to the EEOC about race discrimination by transferring him without his consent to another program to do inferior work that of a Construction Project Manager.

## AND AS FOR A TWENTY-THIRD CAUSE OF ACTION

72.     Plaintiff repeats and realleges paragraphs 1 through 71 as if each paragraph is repeated verbatim herein.

73.     In violation of 42 U.S.C. § 1983, Defendant Michael Popper, while acting under color of State Law, retaliated against Plaintiff for complaining to the EEOC about the violation of his First Amendment freedoms.  Defendant Michael Popper retaliated against him by transferring him without his consent to another program to do inferior work that of a Construction Project Manager.

## AND AS FOR A TWENTY-FOURTH CAUSE OF ACTION

74.     Plaintiff repeats and realleges paragraphs 1 through 73 as if each paragraph is repeated verbatim herein.

75.     Plaintiff had a contract with Defendant City of New York regarding his training for and promotion to the position of Supervisor of the J-51 Program.  Plaintiff had a reasonable expectation that the promotion would be put into effect.  Defendant Michael Popper knew that Plaintiff had this contract of promotion with Defendant City of New York and intentionally and improperly procured the breach of it by denying Plaintiff the promotion and giving it to another individual.  Defendant Michael Popper knew that he was acting improperly, illegally, and maliciously in denying Plaintiff the promotion.  His denying Plaintiff the promotion caused Plaintiff damage.

76.     In denying Plaintiff the promotion to the position of the J-51 Program, Defendant Michael Popper acted without good faith and acted purely out of self-interest, animosity, and vindictiveness against Plaintiff.

77.     Defendant Michael Popper was not a party to Plaintiff's contract regarding promotion with Defendant City of New York.  In maliciously and improperly denying Plaintiff the promotion, he acted outside the boundaries of his employment and intentionally and tortiously interfered with Plaintiff's contract regarding promotion with Defendant City of New York, and are thereby liable to Plaintiff for the common law tort of tortious interference with contractual relations.

## AND AS FOR A TWENTY-FIFTH CAUSE OF ACTION

78.     Plaintiff repeats and realleges paragraphs 1 through 77 as if each paragraph is repeated verbatim herein.

79.     Defendant Michael Popper was acting as an agent of Defendant City of New York when Defendant Michael Popper retaliated against Plaintiff for exercising his First Amendment freedoms in the workplace (Fifteenth Cause of Action) and retaliated against Plaintiff for complaining to the EEOC about the violation of his First Amendment freedoms (Twenty-Fourth Cause of Action).  Therefore, under the common law principal agent/*respondeat superior* rule, Defendant City of New York is jointly and severally liable with Defendant Michael Popper for the general and specific damages sustained in the Fifteenth and Twenty-Fourth Causes of Action, as well as for the attorneys' fees and the costs and disbursements of this action.

## AND AS FOR A TWENTY-SIXTH CAUSE OF ACTION

80.     Plaintiff repeats and realleges paragraphs 1 through 79 as if each paragraph is repeated verbatim herein.

81.     The individual Defendant's violations of Plaintiff's constitutional rights and of Federal Law in Plaintiff's Fifteenth and Twenty-Fourth Causes of Action were carried out under the following policies, customs, and practices of Defendant City:

i.      Failure to establish, publish, and instill in City managers, supervisors, etc. an understanding and respect for City employees' right to freedom of speech and freedom to express opinions under the First Amendment to the Constitution of the United States;

ii.     Failing to take proper corrective and punitive actions against City

18

managers, supervisors, etc. who retaliate against City employees for exercising their right to freedom of speech and freedom to express opinions under the First Amendment to the Constitution of the United States.

**WHEREFORE,** Plaintiff prays for judgment as follows:

**Under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e to 2000e-17 for each of the First, Fifth, Eighth, Twelfth, Sixteenth, and Twentieth Causes of Action against the City of New York:**

i.    declaring the acts and conduct complained of herein in violation of Title VII of the Civil Rights Act of 1962, as amended, 42 U.S.C. §§ 2000e to 2000e-17;

ii.    enjoining and permanently restraining these violations and directing Defendant City of New York and its managers and officers to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated;

iii.    enjoining Defendant City of New York and its managers or officers from committing or allowing any harassment or retaliation against Plaintiff;

iv.    ordering Defendant City of New York to pay Plaintiff the differential between what he would have earned in the position of Supervisor of the J-51 Program had he not been denied the promotion to the position and how much he has earned, from December 2003 and continuing, along with raises, bonuses, and fringe benefits he would have received had he

not been denied the promotion;

v.      ordering Defendant City of New York to promote Plaintiff to the position of Supervisor of the J-51 Program or a position that is equivalent to it;

vi.     ordering Defendant City of New York to pay Plaintiff the sum of Five Hundred Thousand Dollars ($500,000.00) in general and compensatory damages for the violation of his rights and the emotional and mental distress suffered by Plaintiff;

vii.    ordering Defendant City of New York to pay Plaintiff the sum of Five Hundred Thousand Dollars ($500,000.00) in punitive damages;

viii.   awarding Plaintiff attorney's fees and the reasonable costs and disbursements of this action; and

ix.     granting any other and further relief to the Plaintiff as the Court deems necessary, just, and proper.

_____**Under the Civil Rights Act of 1866, as amended, 42 U.S.C.§ 1981 et seq., for each of the Fourth, Eleventh, and Nineteenth against Defendants City of New York and Michael Popper, jointly and severally:**

i.      declaring the acts and conduct complained of herein in violation of the Civil Rights Act of 1866, as amended, 42 U.S.C.§ 1981 et seq.,

ii.     enjoining and permanently restraining these violations and directing Defendants and their managers and officers to take such affirmative action as is necessary to ensure that the effects of these unlawful employment

20

practices are eliminated;

iii.    enjoining Defendants and their managers or officers from committing or allowing any harassment or retaliation against Plaintiff;

iv.    ordering Defendant City of New York to pay Plaintiff the differential between what he would have earned in the position of Supervisor of the J-51 Program had he not been denied the promotion to the position and how much he has earned, from December 2003 and continuing, along with raises, bonuses, and fringe benefits he would have received had he not been denied the promotion;

v.     ordering Defendant City of New York to promote Plaintiff to the position of Supervisor of the J-51 Program or a position that is equivalent to it;

vi.    ordering Defendants to pay Plaintiff the sum of Five Hundred Thousand Dollars ($500,000.00) in general and compensatory damages for the violation of his rights and the emotional and mental distress suffered by Plaintiff;

vii.   ordering Defendants to pay Plaintiff the sum of Five Hundred Thousand Dollars ($500,000.00) in punitive damages;

viii.  awarding Plaintiff attorney's fees and the reasonable costs and disbursements of this action; and

ix.    granting any other and further relief to the Plaintiff as the Court deems necessary, just, and proper.

**Under the New York State Executive Law, Article 15, Section 296 (Human Rights Law), for each of the Second, Sixth, Ninth, Thirteenth, Seventeenth, and Twenty-First Causes of Action against Defendant City of New York;**

     i.     declaring the acts and conduct complained of herein in violation of the New York State Executive Law, Article 15, Section 296 (Human Rights Law);

     ii.     enjoining and permanently restraining these violations and directing Defendant City of New York and its managers and officers to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated;

     iii.     enjoining Defendant City of New York and its managers or officers from committing or allowing any harassment or retaliation against Plaintiff;

     iv.     ordering Defendant City of New York to pay Plaintiff the differential between what he would have earned in the position of Supervisor of the J-51 Program had he not been denied the promotion to the position and how much he has earned, from December 2003 and continuing, along with raises, fringe benefits, and bonuses he would have received had he not been denied the promotion;

     v.     ordering Defendant City of New York to promote Plaintiff to the position of Supervisor of the J-51 Program or a position that is equivalent to it;

     vi.     ordering Defendant City of New York to pay Plaintiff the sum of Five Hundred Thousand Dollars ($500,000.00) in general and compensatory

damages for the violation of his rights and the emotional and mental distress suffered by Plaintiff;

vii.    awarding Plaintiff attorneys fees and the reasonable costs and disbursements of this action;  and

viii.    granting any other and further relief to the Plaintiff as the Court deems necessary, just, and proper.

**Under the New York City Administrative Code §8, et seq., for each of the Third, Seventh, Tenth, Fourteenth, Eighteenth, and Twenty-Second Causes of Action against Defendants City of New York and Michael Popper, jointly and severally;**

i.    declaring the acts and conduct complained of herein in violation of the New York City Administrative Code §8, et seq.;

ii.    enjoining and permanently restraining these violations and directing Defendants City of New York and Michael Popper and their managers and officers to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated;

iii.    enjoining Defendants City of New York and Michael Popper and their managers and officers from committing or allowing any harassment or retaliation against Plaintiff;

iv.    ordering Defendant City of New York to pay Plaintiff the differential between what he would have earned in the position of Supervisor of the

J-51 Program had he not been denied the promotion to the position and how much he has earned, from December 2003 and continuing, along with raises, bonuses and fringe benefits he would have received had he not been denied the promotion;

v.   ordering Defendant City of New York to promote Plaintiff to the position of Supervisor of the J-51 Program or a position that is equivalent to it;

vi.   ordering Defendants City of New York and Michael Popper to pay Plaintiff the sum of Five Hundred Thousand Dollars ($500,000.00) in general and compensatory damages for the violation of his rights and the emotional and mental distress suffered by Plaintiff;

vii.   ordering Defendants City of New York and Michael Popper to pay Plaintiff the sum of Five Hundred Thousand Dollars ($500,000.00) in punitive damages;

viii.   awarding Plaintiff attorneys fees and the reasonable costs and disbursements of this action; and

ix.   granting any other and further relief to the Plaintiff as the Court deems necessary, just, and proper.

**Under 42 U.S.C. § 1983 for each of the Fifteenth, Twenty-Third, Twenty-Fifth, Twenty-Sixth, and Twenty-Seventh Causes of Action against the Defendants, jointly and severally;**

i.   declaring the acts and conduct complained of herein in violation of

24

Plaintiff's First Amendment rights under the Constitution of the United States, actionable pursuant to 42 U.S.C. § 1983;

ii.   enjoining and permanently restraining these violations and directing the Defendants and their managers and officers to take such affirmative action as is necessary to ensure that the effects of these First Amendment violations are eliminated;

iii.   enjoining the Defendants and their managers and officers from committing or allowing any harassment or retaliation against Plaintiff;

iv.   ordering Defendant City of New York to pay Plaintiff the differential between what he would have earned in the position of Supervisor of the J-51 Program had he not been denied the promotion to the position and how much he has earned, from December 2003 and continuing, along with raises, bonuses, and fringe benefits he would have received had he not been denied the promotion;

v.   ordering Defendant City of New York to promote Plaintiff to the position of Supervisor of the J-51 Program or a position that is equivalent to it;

vi.   ordering Defendants City of New York and Michael Popper to pay Plaintiff the sum of Five Hundred Thousand Dollars ($500,000.00) in general and compensatory damages for the violation of his rights and the emotional and mental distress suffered by Plaintiff;

vii.   ordering Defendants City of New York and Michael Popper to pay Plaintiff the sum of Five Hundred Thousand Dollars ($500,000.00) in

punitive damages;

viii.   awarding Plaintiff attorneys fees and the reasonable costs and

disbursements of this action; and

ix.    granting any other and further relief to the Plaintiff as the Court deems

necessary, just, and proper.

**Under Common Law for the Twenty-Fourth Cause of Action against Defendant**

**Michael Popper:**

i.     declaring the acts and conduct complained of herein in violation of

Plaintiff's Common Law rights;

ii.    enjoining and permanently restraining these violations and directing

Defendant Michael Popper to take such affirmative action as is necessary

to ensure that the effects of these violations are eliminated;

iii.   enjoining Defendant Michael Popper from committing or allowing any

harassment or retaliation against Plaintiff;

iv.    ordering Defendant Michael Popper to pay Plaintiff the sum of Five

Hundred Thousand Dollars ($500,000.00) in general and compensatory

damages for the violation of his rights and the emotional and mental

distress suffered by Plaintiff;

v.     ordering Defendant Michael Popper to pay Plaintiff the sum of Five

Hundred Thousand Dollars ($500,000.00) in punitive damages;

vi.    awarding Plaintiff the reasonable costs and disbursements of this action;

26

and

vii.   granting any other and further relief to the Plaintiff as the Court deems

necessary, just, and proper.


Dated:  Brooklyn, New York
       October 6, 2005


                              OFODILE & ASSOCIATES, P.C.
                              Attorneys for Plaintiff Abel K. Famubode


                              By: _____
_____      Anthony C. Ofodile, Esq. (AO-8295)
                                       498 Atlantic Avenue
                                       Brooklyn, New York 11217
                                       (718) 852-8300

27